Stuart H. Schultz, #2886
Andrew D. Wright, #8857
STRONG & HANNI
3 Triad Center, Suite 500
Salt Lake City, Utah  84180
Telephone:  (801) 532-7080
Facsimile:   (801) 323-2037
*Attorneys for Defendant*

---

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

---

| | | |
|---|---|---|
| EDVIN C. REMUND, an individual | ) | |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S MEMORANDUM** |
| | ) | **IN SUPPORT OF ITS MOTION** |
| vs. | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY, dba State Farm Insurance, | ) | |
| a nationwide insurance company, | ) | Case No. 2:07cv00448 |
| | ) | |
| Defendant. | ) | Judge Dee Benson |
| | ) | |

---

COMES NOW DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY ("State Farm"), appearing as a Write-Your-Own Carrier participant in the National Flood Insurance Program, pursuant to the National Flood Insurance Act of 1968,[1] and in its fiduciary capacity as a fiscal agent of the United States, hereby submits its Memorandum in Support of its Motion for Summary Judgment.

---

[1] 42 U.S.C. §4001, *et seq.*

## INTRODUCTION

In this case, Mr. Remund is seeking recovery for water damage that occurred to a detached "cabin-like" structure located at the back of his property. The cabin-like structure is supported by concrete piers as it spans a portion of Red Butte Creek which is channeled by rock retaining walls. (See Pictures, Ex. 2.) In 2005, Mr. Remund noticed that the seasonally cyclical flow of the creek had eroded some of the rocks in the old channeling walls. The holes created by the eroded rocks allowed water to further undermine the rock walls over time and to eventually destabilize the concrete piers supporting the structure. In September, 2005, Mr. Remund verbally reported a claim to State Farm asserting a claim on his policy.

This is not a typical insurance case. In this action, Mr. Remund is suing to recover U.S. Treasury benefits pursuant to a Standard Flood Insurance Policy ("SFIP"). Although Mr. Remund's policy was issued by State Farm, State Farm was acting in its capacity as a Write-Your-Own Carrier ("WYO Carrier") participating in the U.S. Government's National Flood Insurance Program ("NFIP"), pursuant to the National Flood Insurance Act of 1968 ("NFIA"), as amended (42 U.S.C. § 4001, *et seq.*). The NFIA was passed to help make flood insurance more affordable. As a WYO Carrier, State Farm is appearing in this instant matter in its "fiduciary" capacity as a "fiscal agent of the United States" to help accomplish the objectives of the NFIP. See 44 C.F.R. §62.23(f); 42 U.S.C. §4071(a)(1); *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998).

All Standard Flood Insurance Policies are issued through the NFIP. Therefore, a claim on a SFIP is a claim for U.S. Treasury benefits and is not a claim against the WYO Carrier, such

as State Farm, for its funds.  As such, the Appropriations and Supremacy Clauses of the U.S. Constitution, as well as the separation of powers doctrine, prohibit the payment of U.S. Treasury benefits in a manner not sanctioned by Congress, and state laws are preempted and barred.  See the McCarren-Ferguson Act, 15 U.S.C. §1012(b); Masoner v. First Community Ins. Co., 81 F.Supp.2d 1052 at fn. 3 (D. Idaho, 2000); CER 1988, Inc. v. Travelers Property and Cas. Ins. Co., 386 F.3d 263 at fn. 3 (3rd Cir., 2004).   Due to these considerations, the procedural requirements of the SFIP assume heightened importance and are strictly enforced under federal law. See Wagner v. FEMA, 847 F.2d 515, 518-19 (9th Cir. 1988).

Furthermore, the SFIP was not written by State Farm, but rather it was written by the Federal Emergency Management Agency ("FEMA"), the federal agency charged by Congress with administration of the NFIP.  The all of the language of the SFIP, whether issued directly by FEMA or by a WYO Carrier, is established by statute.  See 44 C.F.R. part 61, Appendix A(1) (2002 edition).  State Farm is prohibited by law from waiving, altering or amending any part, provision or requirement of the SFIP. See 44 C.F.R. 61.13(d); also SFIP Article VII(D) (Ex. 3).

As a matter of law, Mr. Remund has failed to comply with the strict procedural requirements of the SFIP.  Mr. Remund failed to submit a sworn proof of loss within 60 days of the date of loss.  Mr. Remund also failed to file suit within one year after State Farm denied his claim.  Because Mr. Remund has failed to comply with these requirements, his claims are barred.

In addition to the procedural defects, Mr. Remund's claims are also barred by the insuring language of the SFIP.  All of the evidence in this case shows that the water damage was caused by cyclical seasonal stream flow which eroded the sides of the channel walls.  Such

erosion does not qualify as a "flood" as that term is defined by the SFIP.  Similarly, the SFIP contains specific exclusions for water-caused earth movement and gradual erosion.  Accordingly, Mr. Remund's claims are not covered by the insuring provisions of the SFIP.

Finally, Mr. Remund's claims for bad faith and extra-contractual liability are preempted by federal law and must be dismissed.

## STATEMENT OF FACTS

1.      Mr. Remund is the owner of the property at 1365 East Harvard Avenue, Salt Lake City, Utah 84105.  (See Complaint, ¶¶ 1, 3, Ex. 11; Remund Depo., p. 4, Ex. 1.)

2.      Mr. Remund's home was built in 1928.  (See Remund Depo., p. 7.)

3.      There are two structures on the property.  One is the primary dwelling and the other is a cabin-like structure located at the rear of the property.  (See Remund Depo., p. 8.)

4.      Red Butte Creek runs at the bottom of a ravine at the back of the Remund property.  (See id. at pp. 8-9.)

5.      Red Butte Creek runs directly beneath the cabin.  The cabin was built on concrete piers that support the cabin as it spans the creek.  (See id. at p. 10; Pictures, Ex. 2.)

6.      A previous owner of the property built channeling walls for the creek to control its flow beneath the cabin.  (See id. at pp. 10-12; Pictures, Ex. 2.)

7.      In April, 2005, Mr. Remund purchased a SFIP from State Farm.  (See id. at p. 28; SFIP, Ex. 3.)

8.      Mr. Remund received a copy of the SFIP from State Farm.  He read the SFIP and understood that the federal government was the underwriter of the policy.  (See Remund Depo.,

p. 20.)

9.      State Farm's SFIP policy is identical to the Federal Emergency Management
Agency's Standard Flood Insurance Policy.  (See Policy; 44 C.F.R. pt. 61 App. (A)(1).)

10.     The SFIP issued to Mr. Remund indicates that State Farm "provides flood
insurance under the terms of the National Flood Insurance Act of 1968 and its amendments, and
Title 44 of the Code of Federal Regulations (CFR)." (SFIP, p. 1, Ex. 3.)

11.     The SFIP provides that State Farm "will pay you for direct physical loss by or
from flood to your insured property . . . ." (Id.)

12.     The Policy defines the term "flood" as:

> 1.   A general and temporary condition of partial or complete
> inundation of two or more acres of normally dry land area or of
> two or more properties (at least one of which is your property)
> from:
>
>> a.  Overflow of inland or tidal waters;
>>
>> b.   Unusual and rapid accumulation or runoff of surface
>> waters from any source;
>>
>> c.  Mudflow;
>
> 2.   Collapse or subsidence of land along the shore of a lake or
> similar body of water as a result of erosion or undermining caused
> by waves or currents of water exceeding anticipated cyclical levels
> that result in a flood as defined in A.1.a. above.

(Id.)

13.     The SFIP places certain requirements on an insured in case of a loss.  The SFIP
states:

> In case of a flood loss to insured property, you must:

. . .

    4.      Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:

        a.  The date and time of loss;
        b.  A brief explanation of how the loss happened;
        c.  Your interest (for example "owner") and the interest, if any, of others in the damaged property.
        d.  Details of any other insurance that may cover the loss;
        e.  Changes in title or occupancy of the covered property during the term of the policy;
        f.  Specifications of damaged building and detailed repair estimates;
        g.  Names of mortgagees or anyone else having a lien, charge, or claim against the covered property;
        h.  Details about who occupied any insured building at the time of loss and for what purpose; and
        i.  The inventory of damaged personal property described in J.3 above.

(Id. at p. 12-13.)

    14.    The SFIP indicates that, in the event of a denial, the insured has one year to file suit against the insurer. The SFIP states:

You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue, you must start the suit within 1 year after the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of loss. This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.

(Id. at p. 14.)

    15.    The SFIP states that "all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the

National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.) and Federal common law." (<u>Id.</u> at p. 18.)

16.     The SFIP excludes coverage for earth movement caused by land subsidence, destabilization of land due to the accumulation of subsurface water, and gradual erosion.  The SFIP states:

> We do not insure for loss to property caused directly by earth movement even if the earth movement is caused by flood.  Some examples of earth movement that we do not cover are:
>
>   1. Earthquake;
>   2. Landslide;
>   3. Land subsidence;
>   4. Sinkholes;
>   5. Destabilization or movement of land that results from accumulation of water in subsurface land area; or
>   6. Gradual erosion.

(<u>Id.</u> at p. 9.)

17.     In May, 2005, Mr. Remund noticed that the creek was removing rocks embedded in the channeling walls, creating holes in the walls.  (<u>See</u> Remund Depo., p. 26-27, Ex. 1.)

18.     Mr. Remund stated that in May, 2005 the water in the creek was not running over the top of the channeling walls. (<u>See</u> <u>id.</u> at p. 45.)

19.     Mr. Remund also observed that a concrete pier had settled.  (<u>See</u> <u>id.</u> at p. 28-30.)

20.     Mr. Remund stated that the settling occurred due to erosion behind the creek's channeling wall.  (<u>See</u> <u>id.</u> at p. 27-30.)

21.     Before September 23, 2005, Mr. Remund verbally reported a claim to State Farm for the damage to the channeling wall.  (<u>See</u> <u>id.</u> at p. 32.)

22.     On September 23, 2005, State Farm Representative Steve Purcell inspected the damaged areas of Mr. Remund's property.  (See id.)

23.     On October 21, 2005, State Farm sent Mr. Remund a letter denying his claim. (See State Farm Letter, Oct. 21, 2005, Ex. 4.)

24.     Mr. Remund understood that in the letter State Farm had denied his claim. (Remund Depo., p. 47, Ex. 1.)

25.     On January 17, 2006, Mr. Remund sent a letter indicating his disagreement with State Farm's October 21, 2005 denial. (See Remund Letter dated Jan. 17, 2006, Ex. 5.)

26.     Mr. Remund's January 17, 2006 letter was signed but was not sworn to. (See id.)

27.     Mr. Remund's January 17, 2006 letter was Mr. Remund's first written submission to State Farm.

28.     On January 27, 2006, State Farm responded to Mr. Remund's letter and reiterated its denial of his claim.  (See State Farm Letter, dated Jan. 27, 2006, Ex. 6.)

29.     On February 10, 2006, Mr. Remund replied again stating that he disagreed with State Farm's denial.  (See Remund Letter dated Feb. 10, 2006, Ex. 7.)

30.     Mr. Remund's February 10, 2006 letter was signed but was not sworn to. (See id.)

31.     On May 3, 2006, Mr. Remund's attorney, Mr. Steffensen, sent a letter to State Farm demanding payment for Mr. Remund's claim. (See Steffensen Letter dated May 3, 2006, Ex. 8.)

32.     Mr. Steffensen's letter did not contain a signed and sworn statement from Mr. Remund. (See id.)

33.     On July 19, 2006, Mr. Steffensen sent a second letter demanding payment for Mr. Remund's claim. (See Steffensen Letter dated July 19, 2006, Ex. 9.)

34.     Mr. Steffensen's second letter did not contain a signed and sworn statement from Mr. Remund. (See id.)

35.     By July, 2006, Mr. Remund had performed a substantial amount of the repairs to prevent the home from falling into the stream.  (See Remund Depo., p. 47, Ex. 1.)

36.     On December 13, 2006, Mr. Remund faxed a handwritten document entitled "Phase 1 of Project – Summary of Expenses to date – Stream Project – Claim # 44-U337-391" ("Summary of Expenses").  (See Summary of Expenses, Ex. 10; Complaint, ¶ 21, Ex. 11.)

37.     The Summary of Expenses was neither signed nor sworn to by Mr. Remund. (See Summary of Expenses, Ex. 10)

38.     Mr. Remund attached invoices and bank account statements to the Summary of Expenses.  (See id.)

39.     On April 16, 2007, Mr. Remund filed suit in state court.  (See Complaint, Ex. 11.)

40.     In his Complaint, Mr. Remund claims that the date of loss for his flood claim is approximately June 1, 2005.  (See id. at ¶ 7.)

41.     Mr. Remund testified that the document he considered to be a proof of loss was the Summary of Expenses sent on December 13, 2006.  (Remund Depo., p. 74-75, Ex. 1.)

42.     Structural engineer Ronald J. Reaveley provided an expert opinion regarding the stream flow and the cause of the damage to Mr. Remund's cabin.

43.     Mr. Reaveley makes the following finding regarding the Red Butte Creek's

streamflow: "When the main damage occurred to the Remund Residence in year 2005, the maximum daily discharge stream flow was 22 cubic feet per second." (Reaveley Report, p. 2, Ex. 12.)

44.     Mr. Reaveley researched the historical data regarding the stream flow of Red Butte Creek.  He made the following findings:

> In years 1975, 1983, 1993, 1998, and 2006 the maximum daily stream flow was 55, 95, 43, 34, and 45 cubic feet per second respectively.  In those years, the maximum daily discharge stream flow greatly exceeded the year 2005 when the Remund residence suffered severe damage from the Red Butte Creek water flow.

(Id.)

45.     Mr. Reaveley concluded that "[i]n my opinion, the damage to the Remund 'cabin by the creek structure' footings and foundations was clearly caused by erosion of the supporting soils below the building structure footings and foundations." (Id.)

46.     Mr. John F. Wallace, professional engineer specializing in geoenvironmental engineering, also evaluated Mr. Remund's property and determined that the "[d]amage observed at the Remund 'creek house' is the result of additional channel erosion . . . ." (Wallace Report, p. 6, Ex.13.)

47.     Mr. Wallace explains that the channeling walls increased the flow velocities of the creek that led to "undermining the masonry rock retaining walls forming the channel section." (Id.)   This undermining eroded the "retained bank materials [and] eventually compromised the pier foundations supporting the 'creek house.'" (Id., at p. 7)

48.     Mr. Wallace indicates that the flow from a number of years "in all likelihood gradually contributed to the situation" instead of a single event. (Id.)

49.     Mr. Wallace's conclusion is that "[t]he root cause of the damage is not related to the effects of high water or flood conditions, but erosion or channel scour resulting from high flow velocities which undermined the masonry rock walls installed to channel the creek and retain the creek banks." (Id.)

## ARGUMENT

### I.     MR. REMUND FAILED TO COMPLY WITH THE PROCEDURAL REQUIREMENTS OF THE SFIP.

Mr. Remund failed to comply with procedural requirements contained in the SFIP by failing to submit a sworn proof of loss within 60 days of the date of loss and by failing to commence his lawsuit within one year of State Farm's denial of his claim.  These violations are significant because a claim on the SFIP is a claim on the federal government, who is the ultimate insurer and the ultimate risk bearer.  As such, the SFIP's procedural requirements are strictly enforced.  Mr. Remund's claims are barred because he failed to adhere to these procedural requirements.

### A.     Mr. Remund's policy was issued pursuant to the National Flood Insurance Program.  Under this program, the federal government is the ultimate risk-bearer.

Although Mr. Remund's policy was provided by State Farm, the policy is a "standard flood insurance policy" issued pursuant to the National Insurance Act of 1968.  Policies written pursuant to the NFIP differ significantly from typical insurance policies, as demonstrated by the program's history and purpose.  The NFIP was established in 1968 to address the affordability of flood insurance because private insurance companies were unable to provide flood insurance at

affordable rates.[1]  The purpose of the program was to provide "affordable flood insurance on a national basis . . . ." <u>Flick v. Liberty Mut. Fire Ins. Co.</u>, 205 F.3d 386, 388 (9th Cir. 2000).  This objective is accomplished by the federal government subsidizing the program so policies may be offered "below actuarial rates."  <u>Id.</u>; <u>also see Sandia Oil Co., v. Beckton</u>, 889 F.2d 258, 263-64 (10th Cir. 1989) (stating the NFIP was intended to be "a subsidized insurance program . . . designed to accomplish important national goals at some cost to the national treasury.").

The program allows private insurers, such as State Farm, to provide policies under the Write Your Own ("WYO") program.  <u>See Flick</u>, 205 F.3d at 389.  WYO policies are extensively controlled by the federal government and are subject to "'large-scale' federal involvement." <u>Flick</u>, 205 F.3d at 388.  Private insurers "must strictly enforce the provisions set out by FEMA . . . ." <u>C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.</u>, 386 F.3d 263, 267 (3rd Cir. 2004) (citing 44 C.F.R. §§ 61.4(b), 61.13(d) & (e), 62.23(c) & (d)).  WYO program policies are issued "under the auspices of the NFIP, pursuant to the program's regulations, and [are] identical in scope and in cost of policies issued directly by FEMA." <u>Flick</u>, 205 F.3d at 389.  In fact, the language of the SFIP, including WYO policies, are controlled by statute.  <u>See</u> 44 C.F.R. pt. 61 App. (A)(1); 44 C.F.R. 61.13(d); 48 Fed. Reg. 46789 (1983).

The participation of private insurers in the WYO program does not alter the role of the federal government as "the ultimate risk bearer for all expenses of the program . . . ." <u>Sandia</u>, 889 F.2d at 263.  The Third Circuit Court of Appeals has stated that "[i]n essence, the insurance companies serve as administrators for the federal program.  It is the Government, not the

---

[1] The Ninth Circuit Court of Appeals stated that "Congress enacted the National Flood Insurance Act of 1968 in response to a growing concern that the private insurance industry was unable to offer reasonably priced flood insurance on a national basis." <u>Flick</u>, 205 F.3d at 387-88 (citations & footnotes omitted).

companies, that pays the claims." <u>C.E.R.</u>, 386 F.3d at 267.

Additionally, federal law governs the interpretation of the provisions of the SFIP.  The

SFIP states "This policy and all disputes arising from the handling of any claim under the policy

are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood

Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.) and Federal common law." (SFIP,

p. 18, Ex. 3.)  Furthermore, the Ninth Circuit Court of Appeals has stated:

> Since the flood insurance program is a child of Congress, conceived to achieve
> policies which are national in scope, and since the federal government participates
> extensively in the program both in a supervisory capacity and financially, it is
> clear that the interest in uniformity of decision present in this case mandates the
> application of federal law.

<u>Flick</u>, 205 F.3d at 390 (quotations & citations omitted).

**B.    The procedural requirements of the SFIP are strictly enforced.**

Because claims on the SFIP are claims on the federal government, the procedural

requirements of these policies assume heightened significance and are strictly enforced.  The

Ninth Circuit Court of Appeals has stated that the "SFIP's procedural requirements must be

taken seriously: they constitute conditions precedent to a waiver by the federal government of its

sovereign immunity . . . .  Because waivers of sovereign immunity are construed narrowly, the

conditions of an insurance policy offered pursuant to a congressionally mandated program, such

as the NFIP, must be strictly observed." <u>Wagner</u>, 847 F.2d at 518.  The Sixth Circuit Court of

Appeals has stated that "where the federal government has consented to suit, courts must

construe waivers strictly in favor of the sovereign and not enlarge the waiver beyond what the

language requires." <u>State Bank of Coloma v. Nat'l Flood Ins. Program</u>, 851 F.2d 817, 820 (6th

Cir. 1988) (citing <u>Library of Congress v. Shaw</u>, 478 U.S. 310, 106 S. Ct. 2957, 92 L. Ed. 2d 250

(1986)).

　　The Ninth Circuit Court of Appeals indicated the constitutional implications of courts

attempting to avoid such requirements.  The court stated that:

> [T]he Supreme Court has . . . recognized that our power to avoid the terms and
> conditions of a federal insurance policy is . . . curtailed.  In <u>Office of Personnel</u>
> <u>Management v. Richmond</u>, 496 U.S. 414, 110 L. Ed. 2d 387, 110 S. Ct. 2465
> (1990), the Court acknowledged that the Appropriations Clause prohibits the
> judiciary from granting any money claim against the federal government that is
> not authorized by statute.  <u>Id.</u> at 424, 434. . . . [The Appropriations Clause's]
> fundamental purpose is "to assure that public funds will be spent according to the
> letter of the difficult judgments reached by Congress as to the common good and
> not according to . . . individual pleas of litigants." <u>Richmond</u>, 496 U.S. at 428.

<u>Flick</u>, 205 F.3d at 391.

**C.　　The SFIP requires that a proof of loss be submitted within 60 days.**

　　Mr. Remund's claims are barred because he failed to file a proof of loss within 60 days of

his loss.  The SFIP requires an insured to submit a sworn proof of loss within 60 days of the date

of loss.  The SFIP provides that "[i]n case of a flood loss to insured property, you must . . .

[w]ithin 60 days after the loss, send us a proof of loss, which is your statement of the amount you

are claiming under the policy signed and sworn to by you . . . ."  (SFIP, p. 12-13, Ex. 3.)

　　It is well-established that failure to comply with the SFIP's 60 day sworn proof of loss

provision bars recovery.  The <u>Flick</u> court stated that in light of the constitutional issues, "it is

clear that a claimant under a standard flood insurance policy may not avoid strict enforcement of

the 60 day sworn proof of loss requirement . . . ." <u>Flick</u>, 205 F.3d at 391.  The Third Circuit

Court of Appeals has stated "the SFIP clearly and unambiguously requires that proof of loss be

submitted by the insured within 60 days of the claimed flood loss." <u>Suopys v. OPAC</u>, 404 F.3d 805, 810 (3rd Cir. 2005) (citation omitted).  The Fourth Circuit Court of Appeals has stated that the SFIP "specifically requires a claimant to file a proof of loss within 60 days to receive coverage regardless of the circumstances of the claim." <u>Dawkins v. Witt</u>, 318 F.3d 606, 612 (4th Cir. 2003), cert. denied, 539 U.S. 960, 123 S.Ct. 2653 (2003); <u>also</u> <u>see</u> <u>Phelps v. FEMA</u>, 785 F.2d 13 (1st Cir. 1986); <u>Gowland v. Aetna</u>, 143 F.3d 951, 954-55 (5th Cir. 1998); <u>Neuser v. Hocker</u>, 246 F.3d 508 (6th Cir. 2001); <u>Mancini v. Redland Ins. Co.</u>, 248 F.3d 729, 734 8th Cir. 2001); <u>Wagner v. FEMA</u>, 847 F.2d 515, 520 (9th Cir. 1988); <u>Sanz v. U.S. Security Ins. Co.</u>, 328 F.3d 1314, 1320 (11th Cir. 2003).

In this case, Mr. Remund failed to submit the proof of loss within 60 days.  Mr. Remund's complaint states that his date of loss was approximately June 1, 2005.  (<u>See</u> Complaint, ¶ 7, Ex. 11.)  As such, Mr. Remund was required to file a written, sworn proof of loss by July 31, 2005.  Mr. Remund failed to make a timely proof of loss submission to State Farm. In fact, at no time has Mr. Remund submitted a sworn proof of loss as required by the SFIP.  The facts demonstrate that Mr. Remund first verbally reported the claim to State Farm in September, 2005, over a month after the July 31, 2005 deadline. (<u>See</u> Remund Depo., p. 32, Ex. 1.)  Mr. Remund's first written correspondence to State Farm did not occur until January 17, 2006.  (<u>See</u> Remund Letter dated Jan. 17, 2006, Ex. 5.)  This letter did not detail Mr. Remund's expenses and was not sworn to by Mr. Remund. (<u>See</u> <u>id.</u>)  Mr. Remund's subsequent letter also failed to indicate his losses and was not sworn to.  (<u>See</u> Remund Letter dated Feb. 10, 2006, Ex. 7.)  The letters from Mr. Remund's counsel, Mr. Steffensen, did not provide a signed and sworn

statement from Mr. Remund.  (See Steffensen Letters, Ex. 8 & 9.)

At his deposition, when specifically asked if he had submitted a proof of loss, Mr. Remund testified that he had submitted the "Summary of Expenses" document. (See Remund Depo., p. 73-74, Ex. 1.)  This document was submitted to State Farm on December 13, 2006. (See Complaint, ¶ 7, Ex. 11.)  Clearly, this document was submitted well after the July 31, 2005 deadline.  Moreover, Mr. Remund acknowledged that the document was not a sworn statement. (See Remund Depo., p. 75, Ex. 1.)   Additionally, the document is not signed by Mr. Remund. (See Summary of Expenses, Ex. 10.)

Mr. Remund has failed to comply with the 60 day sworn proof of loss requirement of the SFIP.  The facts of this case demonstrate that Mr. Remund failed to make any submission to State Farm by the July 31, 2005 deadline.  Moreover, the facts demonstrate that at no time has Mr. Remund submitted a proof of loss that is signed and sworn.  For these reasons, his claims are barred.

> **D.    Mr. Remund's claims are time-barred as he did not file suit within one year of State Farm's denial of his claim.**

Claims on a SFIP are barred when an insured fails to file suit within one year after the claim has been denied.  The United States Code provides "upon the disallowance by the Director of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Director, may institute an action against the Director on such claim in the United States district court . . . ." 42 U.S.C. § 4072.

Numerous courts have found that when a plaintiff fails to adhere to the SFIP's one-year

statutory time period for filing suit, the claims are barred.  See State Bank, 851 F.2d at 820; Wagner, 847 F.2d at 520-21; Gibson v. American Bankers Ins. Co., 91 F. Supp. 2d 1037 (E.D. Ky. 2000); Steelcraft, Inc. v. Bankers & Shippers Ins. Co., 979 F. Supp. 60 (D. Mass. 1997).

In this case, State Farm denied his claim on October 21, 2005. (See State Farm Letter, Ex. 4.)  Mr. Remund has testified that he understood that this letter denied his claim. (See Remund Depo., p. 47, Ex. 1.)  Therefore, Mr. Remund was required to file suit by October 21, 2006.  Mr. Remund failed to file his suit until April 18, 2007. (See Complaint, Ex. 11.)[2]  Because Mr. Remund failed to comply with this requirement, his claims are barred and should be dismissed.

### E.   Mr. Remund's claim is a single continuous claim that commenced on June 1, 2005.

At his deposition, Mr. Remund suggested that his claim is in fact two claims: a 2005 claim and a 2006 claim.  (See Remund Depo., p. 74, Ex. 1.)  The facts of the case, and Mr. Remund's own testimony, do not support this characterization of his claim.

At his deposition, Mr. Remund repeatedly stated that the damage to his cabin was the result of a continuous process that began in 2005 and was even still occurring on the day of the deposition.[3]  Also, Mr. Remund's complaint states that there has only been one claim at issue

---

[2] In fact, Mr. Remund's claim was not filed in the United States district court, as required by statute and the Policy, until the case was removed by State Farm in July, 2007.

[3] Mr. Remund testified that a small hole had developed in the wall.  He then states "The holes at that point were vey minor.  Water was getting in there and you could see where it had been flowing, but - - of course, now that's increased considerably in the last several years."  (Remund Depo., p. 31-32, Ex.1.)  Mr. Remund was then asked, "So this problem had continued to develop since you first noticed it in '05?"  Mr. Remund responded, "Since I first had the claim guys out there and they looked at it, yes." (Id. at p. 32.)  At another point in his deposition, Mr. Remund stated that "the continual erosion continues all the time.  Today, even. . . . You couldn't define [the damage] by inches or anything of that nature, but it was, and did continue." (Id. at p. 47.)  At another point, Mr. Remund indicated that he had "rebuilt those walls that had progressively washed away to cause the original foundations to settle . . . ." (Id. at 49.)  Additionally, Mr. Remund testified that he believes that the cabin there is

-17-

between himself and State Farm.  Mr. Remund states that he allowed a third inspection of the cabin in January, 2007 "even though State Farm had already denied his claim and had continually denied it for over a year and a half . . . ."  (Complaint, ¶ 22, Ex. 11.)  Because the facts and the Plaintiff's own complaint do not support Mr. Remund's assertion of that two claims exist, the Court should view this case as a single claim.

## II.   IN ADDITION TO THE PROCEDURAL ISSUES SET FORTH ABOVE, THE SFIP DOES NOT PROVIDE COVERAGE FOR MR. REMUND'S CLAIMS.

In addition to the legal defects set forth above, it is clear as a matter of law that Mr. Remund's claims are not covered under the insuring language of the SFIP because the damage to his property was not caused by a "flood" as that term is defined.  The SFIP definition of flood only provides coverage for erosion caused by currents of water exceeding anticipated cyclical levels that inundate an insured's land.  Because the stream flow did not exceed anticipated cyclical levels and because Mr. Remund's property was not inundated, there is no coverage.  Additionally, Mr. Remund's damages were caused by water-caused earth movement and gradual erosion.  The SFIP specifically excludes coverage for such damage.

### A.   There is no coverage for Mr. Remund's claim because a flood did not occur.

The SFIP states that Mr. Remund's property is insured against "flood."  The term "flood" is defined in the policy to mean:

---

"continued settlement" and that the structure is "still moving." (Id. at p. 49.)  Moreover, Mr. Remund was asked "in your observations, this problem started in 2005 and has progressed through the present, at least until you had a chance to address it with putting the piers and concrete there? . . . Is that right, Mr. Remund?"  He responded, "Well, it's even occurring today." (Id. at p. 75-76.)  In a follow-up question, he was asked "so has this problem been a progression since 2005, in you view?"  He responded, "At least from the standpoint of the building falling down [it has been deterred], but it's continuing in the stream." (Id. at p. 76.)

1.   A general and temporary condition of partial or complete inundation of two or more acres of normally dry land area or of two or more properties (at least one of which is your property) from:

    a.  Overflow of inland or tidal waters;

    b.   Unusual and rapid accumulation or runoff of surface waters from any source;

    c.  Mudflow;

2.   Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a flood as defined in A.1.a. above.

(SFIP, p. 1, Ex. 3.)

Only the second definition above is applicable to erosion or undermining claims, such as Mr. Remund's claim.  Under this definition, the collapse or subsidence of land is covered only when three conditions exist.  First, the collapse or subsidence must be caused by erosion or undermining.  Second, the erosion must be caused by "currents of water exceeding anticipated cyclical levels."  Third, the "currents of water" must also "result in a flood as defined by A.1.a."

       **i.**      **Red Butte Creek did not exceed its anticipated cyclical levels in 2005.**

In this case, a flood did not occur on Mr. Remund's property because Red Butte Creek's stream flow did not exceed anticipated cyclical levels in 2005.  Mr. Ronald Reaveley's report demonstrates that the stream flow of Red Butte Creek did not exceed its anticipated cyclical levels.  Mr. Reaveley's report indicates the stream flow data for Red Butte Creek for 1975, 1983, and 1993 through 2007.  (See Reaveley Report, Ex. 12.)  This data shows a wide range of stream

-19-

flow levels for these years.[4]   Based on these figures, Mr. Reaveley makes the following

conclusions:

> 1.     When the main damage occurred to the Remund Residence in year 2005,
>        the maximum daily discharge stream flow was 22 cubic feet per second.
>
> 2.     In years 1975, 1983, 1993, 1998, and 2006 the maximum daily stream
>        flow was 55, 95, 43, 34, and 45 cubic feet per second respectively.   In
>        those years, the maximum daily discharge stream flow greatly exceeded
>        the year 2005 when the Remund residence suffered severe damage from
>        the Red Butte Creek water flow.

(Id.)

Therefore, in the 32 years from 1975 to 2007, there were five years when the daily

discharge rate exceeded the 2005 rate.   These numbers demonstrate that a stream flow of 22

cubic feet per second is within the anticipated cycle of stream flow for the creek.   Consequently,

Mr. Remund cannot prove that the 2005 rate exceeded the anticipated cyclical level.[5]   Therefore,

there is no coverage because no "flood" occurred as that term is defined in the SFIP.

### ii.     Mr. Remund's property was not inundated.

Furthermore, a flood did not occur on Mr. Remund's property because Red Butte Creek's

currents did not create a general and temporary condition of inundation.   For coverage to apply,

the SFIP requires currents to create a "flood as defined in section A.1.a." (SFIP, p. 1, Ex. 3.)

Section A.1.a. states that a "flood" is a "general and temporary condition of partial or complete

---

[4] Mr. Reaveley summarizes this data as follows:
> [T]he greatest maximum daily mean discharge in the past 32 years occurred in 1983 with a flow
> rate of 95 cubic feet per second and the least maximum daily discharge occurred in 2003 with a
> flow rate of 2 cubic feet per second.   The more pertinent data with regards to the Remund claim
> show the maximum daily discharge during 2005 to be 22 cubic feet per second, 2006 to be 45
> cubic feet per second, and 2007 to be 3 cubic feet per second.

(See Reaveley Report, Ex. 12.)
[5] Mr. Remund's testimony confirms that the damage to the cabin was the result of the seasonal cyclical change of
the flow of the stream.   (See Remund Depo. p. 12-14, Ex. 1.)

inundation of two or more acres of normally dry land or two or more properties." (Id.) Therefore, in order for damage caused by erosion from currents to be a covered, the currents must generally inundate an area of normally dry land owned by the insured.

The United States District Court for the District of Oregon considered the coverage provided by the SFIP for damages from erosion caused by currents.  See Mathews v. Farmers Ins. Co., 2005 U.S. Dist. LEXIS 39848 (D. Ore. 2005) (attached as Ex. 14).  In Mathews, after moving into the home located close to a bend in the McKenzie River, the plaintiffs noticed erosion to the riverbank.  Experts determined that the the river was changing course.  The home was eventually demolished because the river undercut the home.  The Mathews made a claim on the SFIP.

The Mathews claimed that a flood had occurred because their loss "was caused by McKenzie River currents exceeding normal cyclical levels." Id. at 21.  The court disagreed, stating that "the currents of water exceeding cyclical levels must also 'result in a flood as defined in A.1.a.'" Id.  Therefore, the court found that the Mathews must also "establish that an overflow of inland water from the McKenzie River caused a general and temporary inundation of their property." Id.  The court stated that the Mathews failed to "present evidence or explain how an overflow of water from the McKenzie River temporarily spread over their land." Id.  As a result, the court determined that there was no coverage for the Mathews' loss because no inundation had occurred.

This case is analogous to Mathews.  In order for coverage to apply, an overflow of the currents from the Red Butte Creek must have generally inundated Mr. Remund's property.

There has been no evidence or even an allegation that such an event occurred. In fact, Mr. Remund testified at his deposition that the creek did not rise above the channel walls. When asked how high the water level in the creek reached, Mr. Remund responded, "Well, it was - - yes, pretty full. Not completely full. I mean, it wasn't running over the tops of those walls underneath the cabin." (Remund Depo., p. 45, Ex. 1.)[6] This testimony demonstrates that no "general and temporary condition of partial or complete inundation" occurred on Mr. Remund's property. Because no inundation occurred, Mr. Remund has failed to demonstrate an essential component of the definition of "flood." As such, there is no coverage for Mr. Remund's claim under the terms of the SFIP.

**C.     The SFIP excludes coverage for earth movement and gradual erosion.**

There is no coverage for Mr. Remund's damages because they are the result of earth movement and gradual erosion, which the SFIP specifically excludes. (See SFIP, p. 9, Ex. 3.) Because the language of this exclusion is plain, there is no coverage for claims caused by earth movement or gradual erosion. See Wagner v. FEMA, 847 F.2d 515 (9th Cir. 1988).

The Ninth Circuit Court of Appeals found that the language of the earth movement exclusion in NFIP policies was plain and enforceable. See id. at 522. The court stated "[a]s the courts have all but universally held, federal flood insurance policies do not cover losses stemming from water-caused earth movements." Id.[7]

---

[6] Later in his deposition, Mr. Remund suggests that the creek may have risen above the channel walls at some point. (Remund Depo., p. 46, Ex. 1.) However, Mr. Remund states that he did not observe this occur. (See id.) Even if such an event occurred, it still would have not met the criteria of a general condition of inundation.

[7] In making this conclusion, the court cited the following cases: Sodowski v. NFIP, 834 F.2d 653, 657-59 (7th Cir. 1987); West v. Harris, 573 F.2d 873, 877 (5th Cir. 1978), cert. denied 440 U.S. 946, 59 L. Ed. 2d 635, 99 S. Ct. 1424 (1979); Kolner v. Director, FEMA, 1983 Fire & Casualty Cas. (CCH) 1129, 1131 (N.D. Ill. 1983); Watt v.

The SFIP does not cover "loss to property caused directly by earth movement even if the earth movement is caused by flood." (SFIP, p. 9, Ex. 3.)  The SFIP states that earth movement includes "land subsidence," "sinkholes," "destabilization or movement of land that results from accumulation of water in subsurface land area," and "gradual erosion." (Id.)

It is clear that Mr. Remund's claimed damages are solely based on the erosive effect of the creek to the channeling walls and the subsequent water-caused earth movement beneath the piers supporting the creek house.  Mr. John F. Wallace determined that the "[d]amage observed at the Remund 'creek house' is the result of additional channel erosion . . . ." (Wallace Report, p. 6, Ex. 13.)  Mr. Wallace explains that the channeling walls increased the flow velocities of the creek that led to "undermining the masonry rock retaining walls forming the channel section." (Id.)  This undermining eroded the "retained bank materials [and] eventually compromised the pier foundations supporting the 'creek house.'" (Id., at p. 7)  Mr. Wallace indicates that the flow from a number of years "in all likelihood gradually contributed to the situation" instead of a single event. (Id.)  Mr. Wallace's conclusion is that "[t]he root cause of the damage is not related to the effects of high water or flood conditions, but erosion or channel scour resulting from high flow velocities which undermined the masonry rock walls installed to channel the creek and retain the creek banks." (Id.)  Additionally, Mr. Remund's own testimony regarding the cause of the damage supports and corroborates Mr. Wallace's findings that the damage to the cabin was the result of gradual erosion.  (See Remund Depo., p. 26-28, Ex. 1.)

Therefore, Mr. Remund's damages are the result of water-caused earth movement which

Giuffrida, 1984 Fire & Casualty Cas. (CCH) 988, 990 (M.D.N.C. 1983); Sternersen Corp. v. Giuffrida (In re Sternersen Corp.), 61 Bankr. 702, 708 (Bankr. D. Md. 1986).

is explicitly excluded from coverage by the SFIP.  Because the earth movement exclusion is applicable to the facts of this case, Mr. Remund's claims should be dismissed.

## III.   MR. REMUND'S BAD FAITH AND PUNITIVE CLAIMS ARE PREEMPTED BY FEDERAL LAW.

Mr. Remund has no claim for bad faith or punitive damages under state law because these claims are preempted by the NFIP.  The Third Circuit Court of Appeals ruled that state law claims are preempted by the NFIP because "the application of state tort law would impede Congress's objectives.  Indisputably a central purpose of the Program is to reduce fiscal pressure on federal flood relief efforts.  State tort suits against WYO companies, which are usually expensive, undermine this goal."  C.E.R., 386 F.3d at 270 (citations and footnotes omitted); also see Wright v. Allstate Ins. Co., 415 F.3d 384, 390 (5th Cir. 2005); Gibson v. American Bankers Ins. Co., 289 F.3d 943, 949-50 (6th Cir. 2002).  The court stated that if bad faith suits were allowed, one of two undesirable consequences would result.  The court stated "[i]f FEMA refused to reimburse WYO carriers for their defense costs, insurers would leave the Program, driving the price of insurance higher.  The alternative, remuneration for losses incurred in such suits, would directly burden the federal Treasury." Id.[8]  This same reasoning applies to state law claims for punitive damages, which are also preempted by the NFIP.

In this case, Mr. Remund's fourth cause of action is for bad faith and he has made a claim for punitive damages.  (See Complaint, p. 6-7, Ex. 11.)  These claims must be dismissed because they are preempted by the NFIP.

---

[8] In Utah, a bad faith claim is a contractual claim instead of a tort claim.  However, this difference is immaterial because the above-stated reasoning regarding the effect of such claims is equally applicable to state law bad faith contractual claims as it is to state law bad faith tort claims.

## CONCLUSION

Mr. Remund's claims fail for numerous reasons. First, Mr. Remund's claims are barred because he failed to comply with the procedural requirements the SFIP. Mr. Remund failed to submit a proof of loss with State Farm within 60 days of the date of loss and he failed to file suit within one year of State Farm's denial of his claim. Both of these omissions are fatal to his claims.

Furthermore, Mr. Remund damages are not losses covered by the SFIP. A flood, as that term is defined, did not occur because Red Butte Creek's stream flow did not exceed its anticipated cyclical levels and Mr. Remund's property was not generally inundated. Also, Mr. Remund's damages are the result of water-caused earth movement or gradual erosion, which are specifically excluded under the terms of the SFIP.

Additionally, Mr. Remund's claims for bad faith and punitive damages are specifically barred because these claims are based on state law which is preempted by the NFIP.

For these reasons, Mr. Remund's claims against State Farm should be dismissed.

DATED this 15th day of December, 2008.

STRONG & HANNI

*/s/ Andrew D. Wright*

By_____
        Stuart H. Schultz
        Andrew D. Wright
        Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of December, 2008, a true and correct copy of

the foregoing **Defendant's Memorandum in Support of Motion for Summary Judgment** was

served by the method indicated below, to the following:

| | | |
|---|---|---|
| Brian W. Steffensen | (√) | U.S. Mail, Postage Prepaid |
| STEFFENSEN LAW OFFICES | ( ) | Hand Delivered |
| 2159 South 700 East Suite 240 | ( ) | Overnight Mail |
| Salt Lake City, UT 84106 | ( ) | Facsimile |

*/s/ Andrew D. Wright*

_____

005509.00105

-26-