IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| EDVIN C. REMUND, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>STATE FARM FIRE AND CASUALTY COMPANY, dba State Farm Insurance, a nation wide insurance company,<br><br>Defendant. | **ORDER AND MEMORANDUM DECISION**<br><br>Case No. 2:07-cv-448-CW-PMW |

Now before the court is Defendant State Farm Fire and Casualty Company's motion for summary judgment regarding Counts II and III. For the reasons stated below, State Farm's motion is GRANTED.

## BACKGROUND

Plaintiff Edvin C. Remund owns property in Salt Lake City, Utah. The property includes a primary dwelling and a secondary "summer home" located on the rear section of the property built on concrete piers spanning Red Butte Creek. The previous owner of the property built retaining walls to control the flow of the creek below the summer home. In April 2005, Mr. Remund consulted with Vicki Tuaa, an insurance agent, to obtain flood insurance for the property. Mr. Remund purchased a Standard Flood Insurance Policy (the "Policy") from State Farm, which State Farm issued as part of a federal program described below.

Mr. Remund asserts that before he purchased the Policy, Ms. Tuaa advised him that the

1

Policy would be the most appropriate for him and warranted to him that the policy would cover any flood damage his property sustained, including any damage to the foundation of the summer home and retaining walls. Mr. Remund received a copy of the Policy and understood that the federal government was the underwriter of the policy. The language of the Policy excluded damage to retaining walls and any damage due to subsidence, even if the subsidence was due to a flood.

In June 2005, Mr. Remund noticed that rocks embedded in the retaining walls were displaced by the creek, leaving holes in the walls. One of the piers supporting the summer home had settled as well. Mr. Remund called State Farm to report a claim for damage to the retaining walls and summer home. On September 23, 2005, State Farm sent a representative to inspect the damage. State Farm sent Mr. Remund a letter on October 21, 2005, denying his claim. Mr. Remund sent letters in January and February 2006 explaining his disagreement with State Farm's denial. State Farm sent another representative to inspect Mr. Remund's property in the summer of 2006. Mr. Remund took steps to mitigate his damages and repair the retaining walls and structural supports to keep the summer home from collapsing.

When State Farm again refused to pay his claims, Mr. Remund filed suit in state court. In his complaint, he alleged causes of action for breach of contract, breach of warranty, equitable and promissory estoppel, and bad faith. State Farm removed to this court in 2007. During the course of motion practice, Mr. Remund voluntarily dismissed all claims except for breach of warranty (Count II) and estoppel (Count III), both under Utah state law. In those claims, Mr. Remund asserts State Farm is bound to cover his claims by Ms. Tuaa's representation that the Policy would cover all damages.

State Farm has moved for summary judgment on Counts II and III on two main grounds. First, State Farm contends that Mr. Remund's state law claims are federally preempted. Next, State Farm contends that even if the state law claims are not preempted, they fail on the merits for various reasons. Mr. Remund argues that his claims are not preempted. Mr. Remund further asserts that his state law claims should go forward on the merits. For the reasons discussed below, State Farm's motion is GRANTED.

## ANALYSIS

### I. Standard for Summary Judgment

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c). *See also Adler v. Wal-mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). Courts analyze the facts and reasonable inferences in a light most favorable to the nonmoving party. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). A genuine issue of material fact is created by factual evidence impacting the outcome of a lawsuit on which a rational jury could find in favor of the nonmoving party. *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1216 (10th Cir. 2000). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### II. Mr. Remund's Claims Are Preempted by Federal Law

State Farm argues that Mr. Remund's remaining state law claims are federally preempted. Federal law preempts state law (1) when Congress has clearly expressed an intention to do so

3

("express preemption") (2) when Congress has clearly intended, by legislating comprehensively, to occupy an entire field of regulation ("field preemption"), and (3) when a state law conflicts with federal law ("conflict preemption"). *See Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 486 (10th Cir. 1998). Here, State Farm argues that the doctrines of express preemption and conflict preemption both bar Mr. Remund's state law claims. Express preemption applies when a federal statute or regulation expressly preempts state law. *See Williams v. United Parcel Serv., Inc.*, 527 F.3d 1135, 1139 (10th Cir. 2008). Conflict preemption "occurs either when compliance with both the federal and state laws is a physical impossibility, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Mount Olivet*, 164 F.3d at 486 (citations omitted). When evaluating whether conflict preemption bars state law, the "purpose of Congress is the ultimate touchstone" and "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Deane v. United States*, 329 Fed. Appx. 809, 813 (10th Cir. 2009) (quoting *Wyeth v. Levine*, --- U.S. ----, 129 S.Ct. 1187, 1194 (2009)). Courts should be especially cautious to find conflict preemption "when the alleged conflict is in an area traditionally occupied by the States." *Ramsey Winch Inc. v. Henry*, 555 F.3d 1199, 1204 (10th Cir. 2009) (citation omitted).

Here, State Farm argues that Mr. Remund's state law causes of action are expressly preempted by the National Flood Insurance Act of 1968 and its implementing regulations, and that the causes of action are also preempted under a conflict preemption analysis. Mr. Remund, of course, disagrees. To give a simplified overview of relevant statutory scheme, the Act gives the Federal Emergency Management Agency the power to administer a nationwide federal flood

insurance program. *See Moffett v. Computer Sciences Corp.*, 457 F. Supp. 2d 571, 573 (D. Md. 2006). As part of that program, private insurance companies, called "WYO Carriers," issue policies in their own names. *Id.* at 573-74. FEMA sets the terms of the Policy, which are set out in the regulations, and the WYO Carriers may not alter those terms. *See id.* While the WYO Carriers market and administer the policies, including handling claims, the federal government pays for claim and claim defense. *See id.* The Policy expressly states that federal law governs the policy and any claims related to claims handling. *See* 44 C.F.R. pt. 61 app.A(1), art. IX.

Mr. Remund characterizes his state law claims as related to policy procurement, meaning that they arose from conduct during the period before State Farm issued him the Policy. Controversy has arisen among federal courts as to whether state law claims relating to policy procurement against WYO Carriers are preempted by the Act. To wit, some cases hold that the Act preempts such claims, while others hold the opposite. Most of the cases directly addressing this issue are at the federal district court level: at this time there is only one federal circuit court that has squarely addressed the question. A thorough review of the cases on this question reveals why there is a split: the question quite complex and open to opposite conclusions that are both defensible.

Representative of the district court cases concluding that state law procurement claims are not preempted by federal law is *Reeder v. Nationwide Mutual Fire ins. Co.*, 419 F. Supp. 2d. 750 (D. Md. 2006). In *Reeder*, the court conducted an exhaustive analysis of the Act, its implementing regulations, and the case law and reached the conclusion that "state tort law claims for negligence, negligent misrepresentation, fraud and deceit are not preempted by federal flood insurance law." 419 F. Supp. 2d at 763 (footnote omitted). Typical of the district court cases

5

holding that state law procurement claims are preempted is *Moffett*, another case from the same federal district as *Reeder*. In *Moffett*, the court undertook an equally detailed consideration of the statute, the regulations, and prior precedent and held that a state law fraud claim related to procurement is federally preempted by conflict preemption. *See Moffett*, 457 F. Supp. 2d at 588. The court views *Reeder* and *Moffett* as particularly strong examples of the merits of each position.

Last year, in *Campo v. Allstate Ins. Co.*, 562 F.3d 751 (5th Cir. 2009), the Fifth Circuit became the first federal appellate court to address directly the issue of whether preemption bars state law procurement claims. In *Campo*, the court ruled that such claims are not preempted by federal law. Initially, the *Campo* court rejected the proposition that procurement claims are barred by express preemption. *See id.* at 757-758. The court also concluded that conflict preemption did not apply, on two main grounds. First, the court cited the doctrine of "*inclusio unius est exclusio alterius.*" *Id.* at 757. The court reasoned that "FEMA has expertise in drafting regulations that explicitly preempt state law, and yet in this instance it chose to confine the plain language of its preemption to handling." *Id.* at 758. Second, the court concluded that "permitting prosecution of procurement-related state-law tort suits does not impede the full purposes and objectives of Congress." *Id.*

Importantly, FEMA has publicly announced its disagreement with the decision in *Campo*. In a July 16, 2009 memorandum to WYO Carriers, Edward L. Connor, FEMA's Acting Federal Insurance Administrator for the National Flood Insurance Program, opined that in *Campo*, the Fifth Circuit "significantly revised the scope of Federal preemption of. . . state law tort remedies by the National Flood Insurance Act and its implementing regulations." (*See* FEMA Memo.,

attached as Ex. 1 to Dkt. No. 56.) The memorandum continues that "FEMA previously understood and intended its regulations to preempt state law claims related to policy formation, renewal, and administration arising from allegations of WYO company error as distinct from agent error. . ." (*Id.*) The memorandum concluded that "preemption should apply to the nationally uniform and FEMA-mandated processes governing policy issuance and the administration of existing flood policies, including but not limited to rating, renewal, transfer, non-renewal, cancellation, or reformation." (*Id.*)

As discussed below, the court agrees with State Farm that Mr. Remund's claims are barred by both express preemption and conflict preemption.

### A. Express Preemption

No case cited by the parties has ruled that state law procurement claims are expressly preempted. State Farm nonetheless urges the court to break new ground and hold that the Act and its regulations do expressly preempt such claims. State Farm contends that various statements by Congress and FEMA support a conclusion that state law procurement claims are expressly preempted.

First, State Farm argues that before 2000, the Policy stated, without limitation, that "this policy" is governed by federal law. According to State Farm, this broad statement was meant to include procurement claims, and the addition of "claims handling" to the Policy's choice of law provision was meant to clarify, not limit the scope of preemption. The court does not find this argument persuasive. The phrase "this policy" seems most naturally read to cover claims by insureds relating to a policy after a policy has been issued. That phrase does not clearly refer to procurement claims.

State Farm's second argument is based on a regulation found at 44 C.F.R. 61.5(e), and has more merit. That regulatory provision states that:

> The standard flood insurance policy is authorized only under the terms and conditions established by Federal statute, the program's regulations, the Administrator's interpretations and the express terms of the policy itself. Accordingly, representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the Program's regulations, are void, and the duly licensed property or casualty agent acts for the insured and does not act as agent for the Federal Government, the Federal Emergency Management Agency, or the servicing agent.

44 C.F.R. 61.5(e). State Farm argues that through this regulation, FEMA intended to cut off liability for WYO Carriers for any agent misrepresentations regarding the scope of coverage, including by preempting state law procurement claims against those carriers.

Mr. Remund responds that in *Spence v. Omaha Indem. Ins. Co.*, 996 F.2d 793, 796 (5th Cir. 1993), the court "decline[d] to accept a reading of [44 C.F.R. 61.5(e)] immunizing WYO companies from liability for the tortious conduct of their agents." The *Spence* court, however, gives no indication as to how it came to this conclusion, which is at odds with the provision. On its face, the regulation states that an agent's representations that are inconsistent with the scope of coverage provided by Policy are void.[1] Moreover, the regulation states that if an agent makes representations inconsistent with the scope of coverage provided by the Policy, the agent is deemed to be acting on behalf of the insured, not FEMA or the "servicing agent," which can only refer to the WYO Carrier. This regulation signals a clear intent to shield FEMA and WYO Carriers from liability for misrepresentations about the scope of coverage made by agents seeking

---

[1] In this case, Mr. Remund does not dispute that the coverage he now seeks in inconsistent with the scope of coverage provided.

8

to sell flood insurance. In addition, 42 U.S.C. § 4081(c) bolsters State Farm's argument on this point. Section 4081(c) mandates that FEMA must indemnify agents or brokers for errors and omissions on the part of FEMA and the WYO Carriers, but disallows FEMA from indemnifying agents and brokers for their own errors and omissions.

When considered together, 44 C.F.R. 65.1(c) and 42 U.S.C. § 4081(c) evidence an intent that WYO Carriers be shielded from liability for representations made by agents and brokers that are inconsistent with the Policy. Instead, these provisions express a policy that liability for such statements be placed squarely on the brokers and agents individually. These two provisions, then, convince the court that state law claims relating to procurement are expressly preempted.

> **B.** **Conflict Preemption**

In the alternative, the court concludes that even were express preemption not to apply, Mr. Remund's state law claims would be precluded by conflict preemption. The court is convinced by the reasoning in *Moffett*, 457 F. Supp.2d at 583-89, and rejects the analysis in cases such as *Reeder* and *Campo*. The court accepts the *Moffett* court's rationale that federal funds may well be at stake when procurement fraud is alleged and that such allegations may impose on FEMA costs related to the defense of such claims. The court also notes that FEMA's memorandum of July 16, 2009, which rejected *Campo*, was also important to this decision. As a broad, non-exhaustive summary of the reasons the conflict preemption has occurred, the court agrees that federal money is at stake in state law procurement claims against WYO Carriers and further agrees that allowing such claims would interfere with a key purpose of the Act, which is to encourage lower cost flood insurance. The court has reached this conclusion cautiously, after

giving considerable weight to the states' traditional role in regulating insurance.[2]

### III. Even if Not Preempted, Mr. Remund's State Law Claims Fail for Lack of Reasonable Reliance

Were Mr. Remund's claims not preempted by federal law, he would nevertheless be required to prove each of the elements necessary to succeed against State Farm under Utah law. He fails to do so, giving the court an alternative basis upon which to grant summary judgment in favor of State Farm.

State Farm correctly points out that to succeed on either his breach of warranty claim or estoppel claim, Mr. Remund must prove that he acted in reasonable reliance on Ms. Tuaa's representations about coverage. *See Groen v. Tri-O-Inc.*, 667 P.2d 598, 606 (Utah 1983) (reliance an element of breach of warranty claim) and *Youngblood v. Auto-Owners Ins. Co.*, 158 P.3d 1088 (Utah 2007) (reliance an element of estoppel claim). State Farm contends that because the terms of the Policy are established by federal regulation, Mr. Remund was at least on constructive notice of the terms of the policy, citing *Federal Crop Ins. Corp. v. Merrill*, 322 U.S. 380 (1947) and *Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51 (1984). Such notice, State Farm argues, precludes Mr. Remund from proving that he reasonably relied upon the alleged misrepresentation as to coverage, which defeats both claims.

While *Merrill* and *Heckler* may be persuasive in an appropriate case, the court need not reach that issue here. Mr. Remund admits that he received and read the Policy, although he disputes that what he read alerted him to the fact that the Policy would not cover the type of loss he now claims. Mr. Remund had actual notice of the terms of the Policy. Under *Youngblood*, an

---

[2] It is worth noting that Mr. Remund did not bring any claims against Ms. Tuaa, against whom his state law claims would not be federally preempted.

insured may prevail on a claim that the agent for the insurer misrepresented the scope of coverage under a policy if the insured reasonably relied upon the agents statement. Nevertheless, "insurance purchasers fail to make the effort to read and understand the content of their insurance policies at their peril. When the language is clear, direct, understandable to ordinary people, and complete, it will be more difficult to prove reasonable reliance on the contrary oral promise." 158 P.3d at 1096. Under Utah case law "[a] party claiming an estoppel cannot rely on representations or acts if they are contrary to his knowledge of the truth or if he had the means by which with reasonable diligence he could ascertain the truth." *Id.* at 1095, quoting *Perkins v. Great-West Life Assurance Co.,* 814 P.2d 1125, 1130 (Utah Ct. App. 1991). Such a claim cannot prevail where an insured had access to information, which if considered, would have alerted him to question whether the coverage was available. *See Youngblood*, 158 P.3d at 1095.

Because Mr. Remund admits that he received and read the Policy, the reasonableness of his reliance turns on whether the terms of the Policy provided clear notice that the loss for which Mr. Remand makes a claim would not be covered. State Farm argues Mr. Remund should have anticipated that the increased steam flow that damaged his property would not meet the Policy's definition of "flood." State Farm argues that coverage is provided only for erosion caused by "currents of water exceeding anticipated cyclical levels that inundate an insured's land." (State Farm Memo., Dkt. No. 17, at 18.) This argument fails for two reasons.

First, the definition of "flood" may or may not be broad enough to cover Mr. Remund's claim. "Flood" has a two part definition, and the part cited by State Farm applies on its face only to the "[c]ollapse or subsidence of land along the shore of a lake or similar body of water." 44 C.F.R. Pt 61, App.A(1) § II.A.2. It would be hard to credibly argue that Red Butte Creek is

11

similar to a lake. The part of the Policy that more reasonably appears to apply to Mr. Remund's situation defines "flood" as "[a] general and temporary condition of two or more acres of normally dry land area from. . . [u]nusual and rapid accumulation or runoff of surface waters from any source." 44 C.F.R. Pt 61, App.A(1) § II.A.1.b. State Farm's argument that Mr. Remund should have been on notice that the Policy's "flood" definition would preclude his claims does not prevail because it would have not have been unreasonable for Mr. Remund to assume that in some circumstances, excessive run off in Red Butte Creek might meet that definition.

Second, even if Mr. Remund should have realized that "flood" should be read as State Farm argues, there is no evidence that Mr. Remund should have anticipated that the run-off from the stream would not exceed "anticipated cyclical levels." If the court were to only look to State Farm's argument on the definition of "flood," it would not reach the conclusion that Mr. Remund's reliance was not reasonable.

As State Farm indirectly argues in its briefing, however, the Policy did place Mr. Remund on reasonable notice that his claims were excluded. The Policy contains the following exclusion: "**Property Not Covered** We do not cover any of the following: . . . 12. Fences, **retaining walls**, seawalls, bulkheads, wharves, **piers**, bridges and docks." 44 C.F.R. Pt. 61, App. A(1) § IV.12. (emphasis added). This language is not difficult to understand, even for those not familiar with insurance concepts. Yet it is clear that the structures for which Mr. Remund claims damages are "retaining walls" and "piers."

This conclusion holds true even though Mr. Remund called those structures by different names in his complaint. That is, Mr. Remund claimed losses relating to the foundation of the

summer cabin and to channeling walls. This renaming effort fails because it places form over function. First, Mr. Remund admits that the cabin "was built on concrete piers that support the cabin as it spans the creek." (Remund Opp., Dkt. No. 50, at 2, ¶ 5.) In other words, the cabin's foundation is a pier, which is excluded. Second, Mr. Remund also makes no credible argument why the "channeling walls" that he complains were damaged are not simply "retaining walls" by another name.

In the face of Mr. Remund's admission that he received and read a copy of the Policy, Mr. Remund could not have reasonably relied upon any representation that the Policy would cover flood damage to the pier and retaining walls. Thus, as a matter of law, Mr. Remund cannot establish the necessary elements to prevail on his claims for breach of warranty or estoppel.

## CONCLUSION

For the reasons stated above, the court concludes that Mr. Remund's state law claims under Counts II and II are preempted, and in the alternative that they fail on the merits. State Farm's motion for summary judgment is **GRANTED**.

SO ORDERED this 18th day of May, 2010.

BY THE COURT:

_____
Clark Waddoups
United States District Judge